## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUESTTS

| | |
|---|---|
| JACQUELYN TREMBLETT, )<br>As Personal Representative of the )<br>Estate of SAMUEL TREMBLETT, )<br>        Plaintiff )<br>)<br>v. )<br>)<br>)<br>TESLA, INC., )<br>        Defendant ) | **COMPLAINT AND**<br>**JURY DEMAND** |

### INTRODUCTION

The Plaintiff, Jacquelyn Tremblett, as Personal Representative of the Estate of Samuel Tremblett, Decedent, brings this wrongful death action pursuant to Massachusetts General Laws Chapter 229, §§ 2 and 6 as well as M.G.L. c. 93A §2 against Defendant Tesla, Inc. The gravamen of the Plaintiff's case is that Defendant, Tesla, Inc. (hereinafter referred to as "Tesla") designed, manufactured and placed into the stream of commerce a defective 2021 Model Y vehicle which, following a collision, erupted in flames and trapped the Plaintiff's decedent, Samuel Tremblett inside where he sustained catastrophic thermal injuries, smoke inhalation injuries causing his death.

### PARTIES

1.      Plaintiff, Jacquelyn Tremblett, is the mother and duly appointed Personal Representative of the Estate of Samuel Tremblett, pursuant to an appointment issued by the Bristol County, Massachusetts Probate and Family Court. She is a resident of Easton, Massachusetts.

2.      Defendant Tesla is a business entity incorporated in the State of Delaware. Tesla

is in the business of designing, manufacturing and selling automobiles. It has its principal place of business at 1 Tesla Road, Austin, Texas 78725.

3.      At all times relevant hereto, Tesla has marketed its vehicles under the brand name "Tesla".

4.      Tesla conducts substantial business in the Commonwealth of Massachusetts.

5.      Tesla's Registered Agent for Service of Process in Massachusetts is CT Corporation, located at 155 Federal Street, Boston, Massachusetts, 02210.

6.      Tesla provides after-sale products to vehicles it sells including periodic over-the-air updates for advanced driver assistance systems ("ADAS") software in Tesla vehicles.

7.      Tesla designed, manufactured and sold the 2021 Tesla Model Y vehicle ("Subject Vehicle") that is the subject of this lawsuit.

## JURISDICTION & VENUE

8.      Pursuant 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this case by diversity jurisdiction because the matter in controversy exceeds the sum value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

9.      At all times relevant hereto, Tesla has and continues to conduct business in the Commonwealth of Massachusetts, with stores located in Boston, Dedham, Natick, Norwell and Peabody, where sells, distributes and services Tesla vehicles for customers in Massachusetts.

10.     The acts or omissions of Tesla caused injuries to persons in Massachusetts, including Plaintiffs' decedent, Samuel Tremblett.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Tesla has sufficient minimum contacts within the Commonwealth of Massachusetts and has intentionally

availed itself of the markets within Massachusetts through the promotion, sale, marketing, and distribution of Tesla vehicles.

## FACTS

12.    In 2014, Tesla began equipping electric vehicles with technology and hardware that was intended to allow the vehicles to automate some steering, braking, and acceleration functions.

13.    Tesla designed its vehicles, including the Model Y, to be all electric, with exterior door handles that are flush with the door and electronically extend when the driver with a key is in proximity.  Despite Tesla's public claims to the contrary, the electric door handles do not extend in the event of an electrical system failure, for instance, during a crash. The interior door handles are also electronic, and while they include a manual door release, the inconspicuous location and markings are not readily discernable , particularly to an occupant who needs to exit the vehicle quickly escaping a post-crash fire.

14.    The Tesla Model Y owner's manual, which is electronic, shows the interior manual release without readily discernable "emergency exit" identifiers on page 241:

## Opening a Front Door with No Power

To open a front door in the unlikely situation when Model Y
has no power, pull up the manual door release located in front
of the window switches.



## Opening a Rear Door with No Power

You can open a rear door manually (if equipped) in the
unlikely situation in which Model Y has no power:

**NOTE:** Not all Model Y vehicles are equipped with a manual
release for the rear doors.



1. Remove the mat from the bottom of the rear door pocket.
2. Press the red tab to remove the access door.
3. Pull the mechanical release cable forward.

 **CAUTION:** Only use the manual door release when
Model Y has no power or if otherwise necessary. When
Model Y has power, use the button located at the top
of the interior door handle. Use caution when using the
manual door release; the window will not automatically
lower when the door is opened and damage to the
window or vehicle trim may occur.

15.     At all relevant times, Tesla has warranted that its vehicles are crashworthy in frontal impact crashes.

16.     At all relevant times, Tesla advertised and marketed its vehicles in a manner that has caused consumers, including the decedent Samuel Tremblett, to believe that Tesla vehicles are safe and crashworthy.

17.     Specifically, various Tesla officials – including its Chief Executive Officer, Elon Musk - made numerous public statements misrepresenting the company's emphasis on safety in order to induce the public to believe that its vehicles were safe and reliable. These statements included the following:

(a) In its earnings call for the third quarter of FY 2018, CEO Elon Musk stated the following:

> "[W]e're really going to try to go the extra mile with vehicle safety, not just like there's a series of government mandated tests, but what some companies do is they game the system. So they know where the cycle impact is going to be, they strengthen it right in that position. At Tesla, we're like, okay, what is the weakest point in the car? Let us test it at that position. So the actual safety is not fully captured in the tests because we anti-game the system."

(b) Following Mr. Musk's statement, a lead safety engineer stated:

> "And also important is our principal mission statement on safety, because what we want to do is safety has been probably the important factor for our vehicle. It's not just for electric vehicle, any vehicle period."

(c) Mr. Musk further stated:

> "That's what I mean by like anti game the system, like what is the worst way that the car could be hit, not just sort of strengthen where we know the test will happen and that kind of thing. So, obviously, we're all in these cars. Our friends are in these cars,

families in the cars, so we care a great deal about safety. A lot of people think safety is boring, but not Tesla. … Yeah, I mean, really, honestly, the top reason to refer a friend to buying Tesla is it's going to keep your friend safe."

(d) At the earnings call for the third quarter of FY2021, Mr. Musk represented:

"Safety is extremely important for Tesla. It's the right thing to do. And if you look at various independent testing and regulatory testing of our products, you can see the work of the Testing of our products, you can see the work of incredibly talented engineers and the results of those tests. And our goal in developing safety-oriented software around the car is to continue to go beyond what the hardware is able to provide. …We're excited about the ability for folks to become safer and as a result save money. And it feeds into our priority of a company of building the safest products in the world."

(e) During the earnings call for the first quarter of 2025, Mr. Musk reiterated:

"[W]e here at Tesla, we're absolutely hardcore about safety. You know, we go to great lengths to make the safest car in the world and have the lowest accidents per mile"

18.    Notwithstanding Tesla's misrepresentations of its commitment to driver and passenger safety, it manufactured, marketed and sold to the general public the 2021 Model Y, which was defective and unreasonably dangerous.

19.    Despite repeated concerns from Tesla engineers, Mr. Musk insisted that the vehicles have only sleek door handles which could only be operated electronically. The defect in this design is that an electrical failure resulting from a frontal crash prevents the electronic door handles from operating. In many Model Y vehicles, there either is no manual external override mechanism and the interior manual release is in an inconspicuous location without readily identifiable "emergency exit" markings, thereby trapping the occupants inside the vehicle.

20.    Tesla vehicles also use a lithium-ion battery system that is prone to a condition

known as "thermal runaway" when the battery is impacted in a crash, which causes a fire that spreads rapidly and is difficult to extinguish.

21.    Since the vehicle was introduced into the United States market, Tesla has received numerous reports of adults and children trapped in vehicles during a thermal runaway event. In many cases, one or more of the individuals were trapped in the burning vehicles and were seriously injured or died from thermal injuries. In other words, these individuals burned to death.

22.    Upon information and belief, these incidents include, but are not limited to the following:

(a)  On November 3, 2016, a 2015 Tesla Model S driven by a Mr. Kevin McCarthy crashed near downtown Indianapolis, Indiana. Mr. McCarthy was observed alive after the crash and unsuccessfully attempted to exit the vehicle. He was extricated from the vehicle around twenty minutes after the crash and died at Eskenazi Hospital due to thermal injuries.

(b)  On May 10, 2018, Mr. Stefan Meier lost control of his Tesla Model S on the A2 highway near the Monte Ceneri tunnel in the Swiss canton of Ticino. According to witnesses, the car was launched airborne and burst into flames before reaching the ground. Several witnesses attempted to open the doors and rescue Mr. Meier but were unable to. They were forced to retreat when the car began exploding and they saw flames through the windows.

(c)  On May 10, 2018, Mr. Barrett Riley and Mr. Edgar Monserratt Martinez were trapped in a 2014 Tesla Model S after a crash. Both Mr. Riley and Mr. Martinez survived the collision, but died from burns in the ensuing fire while they were trapped inside unable to open the vehicle doors. Although this crash was just two

blocks from a fire station, the speed and intensity of the fire, coupled with the doors

locking the occupants inside, made it impossible to rescue the two teenagers.

(d) On February 24, 2019, Dr. Omar Awan lost control of his 2016 Tesla Model S in

Davie, Florida, causing him to hit a tree. The vehicle subsequently caught fire, and

Dr. Awan was burned alive. A police officer nearby witnessed the accident and

immediately went to help, but the door handles were retracted which prevented the

officer from opening the doors.

(e) On May 16, 2022, Mr. Hans Von Ohain and passenger Mr. Erik Rossiter were

driving Mr. Von Ohain's 2021 Tesla Model 3 westbound along Bear Creek Road in

Clear Creek County, Colorado, when the vehicle's Autopilot feature unexpectedly

caused the vehicle to sharply veer right off the pavement, resulting in the vehicle

crashing into a tree and bursting into flames. Mr. Rossiter managed to escape, but

was unable to rescue Mr. Von Ohain because the doors could not be opened before

a fire engulfed the vehicle.


(f) On Tuesday June 29, 2021, a three-day old Tesla Model S Plaid vehicle

spontaneously burst into flame while driving in the Philadelphia, Pennsylvania,

suburbs. The driver was entrapped but eventually escaped the burning vehicle by

using force to open the doors.

(g) On March 12, 2022, Mr. Jyung Hoo Hahn was driving his 2020 Tesla Model 3 on

the Palisades Interstate Parkway in Rockland County, New York, when the car

crashed and exploded, resulting in the car igniting. Mr. Hahn survived the initial

impact but was unable to escape the vehicle and was ultimately burned alive.

(h) On Friday May 20, 2022, Mr. Jamil Jutha was driving his Tesla Model Y when the car shut down while he was stopped near an intersection. The car lost all power to its electronic components and smoke began to fill the car through the air vents. Mr. Jutha states that the doors would not open and that the windows would not go down. Mr. Jutha proceeded to kick the window until it broke and he could climb out before the car was engulfed in flames.

(i) On January 7, 2023, Mr. Jeffery Dennis and Ms. Wendy Dennis were driving their Tesla Model 3 westbound on South 56th Street in Tacoma, Washington, when the vehicle suddenly accelerated out of control and crashed into a utility pole. Mr. and Ms. Dennis were unable to escape the vehicle as the doors were inoperable, locking them inside and preventing rescuers from reaching them quickly. Several onlookers attempted to open the doors—to no success—even attempting to break the windows with a baseball bat. First responders arrived shortly thereafter and extricated Mr. Dennis, but not before he suffered serious burns and other catastrophic injuries. Ms. Dennis was not able to be rescued in time and was burned alive as a result of the inoperable doors.

(j) On February 17, 2023, Mr. Heath Miller and Mr. William Price were travelling westbound along Route 25 on Long Island when Miller's 2023 Tesla Model Y collided with an oncoming SUV and caught fire. By the time first responders arrived they could not get close enough to save Mr. Miller or Mr. Price, who were unable to escape the burning vehicle.

(k) On or around July 29, 2023, Mr. Lovell Orr lost control of the Tesla he was driving and slammed into a tree. Mr. Orr was unable to be rescued in time and was burned to death.

(l) In 2023, Mr. Matthew Hubbard Rundell was driving his 2022 Tesla Model 3 in California, when the vehicle's electric door-opening system malfunctioned after a crash. The vehicle caught fire, and Mr. Rundell was trapped inside and burned alive as a result.

(m) On August 5, 2024, Mr. Michael Sheehan was driving his Tesla Cybertruck in Baytown, Texas, when the vehicle suddenly veered off course, struck a culvert, and caught on fire. Mr. Sheehan was trapped inside the Cybertruck as the doors would not open once power was lost.

(n) On or around November 2, 2024, four people—Mr. Neeraj Gohil, Ms. Ketaba Gohil, Mr. Jay Sisodia, and Mr. Digvijay Patil—were killed in a Toronto accident after the Tesla Model Y they were riding in crashed into a pillar and burst into flame. A fifth rider, an unidentified woman in her twenties, narrowly survived after a bystander was able to smash open a window, as the doors would not open. This Tesla Model Y is one of many in which there is no manual release for the rear doors, as noted in the vehicle's manual.[1]

(o) On or about November 27, 2024, Ms. Krysta Michelle Tsukahara, a passenger in a 2024 Tesla Cybertruck heading westbound on Hampton Road in Alameda County, California, was killed after the vehicle hit a tree and caught fire. Power to the

---

[1] https://futurism.com/the-byte/four-die-trapped-burning-tesla; Tesla Model Y user manual: https://web.archive.org/web/20240504002011/https://www.tesla.com/ownersmanual/modely/en_us/GUID-AAD769C7-88A3-4695-987E-0E00025F64E0.html (ARCHIVE)

vehicle's electric doors was shut down, locking the four passengers inside with no way out. Ms. Tsukahara was alive after the crash but was unable to escape the vehicle and burned to death.

(p) On or about April 24, 2025, Mr. Alijah Arenas was driving his Tesla Cybertruck in Southern California when the car's keypad and steering wheel stopped responding. The vehicle crashed into a tree and became engulfed in flames. Mr. Arenas was able to escape the car only because he managed to break the driver's side window.

(q) On or about September 7, 2025, a man and his two nine-year old children, were 'burnt alive' inside his Tesla Model S which had gone off course, hit a tree and ignited. A witness tried to rescue the victims but was unsuccessful as a result of the door's retractable handles. A third child managed to escape.

21.     Notwithstanding the advice of Tesla's engineers that this design was a serious safety hazard, Mr. Musk refused to approve a safe, alternative design.

22.     Tesla continues to manufacture and sell its vehicles with the defective and unreasonably dangerous automated door handles.

23.     On October 29, 2025, at approximately 1:00 am, the Plaintiff's decedent, Samuel Tremblett was driving a 2021 Tesla Model Y alone on the Northbound lane of Turnpike Street (Route 138), Easton, Massachusetts.

24.     Shortly after Mr. Tremblett entered the town of Easton from the town of Raynham, the 2021 Tesla Model Y left its lane of travel, crossed the southbound lane, and collided with a tree. Mr. Tremblett survived the crash.

25.     Immediately after the collision between the vehicle and the tree, the vehicle burst into flames.

26.     As a result of the defective and unreasonably dangerous electronic system for operating the door handles, which was designed, manufactured and sold by Tesla, Samuel Tremblett was unable to exit the vehicle.

27.     Following the crash, Mr. Tremblett contacted an emergency dispatcher through the Emergency 911 system. During the conversation with the dispatcher, he explained that his vehicle was on fire and he was trapped inside. During the conversation with the dispatcher, Mr. Tremblett exclaimed:

> **"I'm stuck in a car crash. …I can't get out, please help me. … I can't breathe. … It's on fire, it's on fire. Help please. … I am going to die. … I'm dying.  Help. […I'm dying… Help… Help."**

28.     Although officers from the Easton Police Department arrived at the scene quickly, they were unable to suppress the fire or remove Mr. Tremblett from the vehicle due to the severity of the fire. Officers reported four explosions during the first ten minutes in which they were on the scene.

29.     Shortly thereafter, officials of the Easton Fire Department arrived on the scene of the fire and worked to extinguish the flames. Despite diligent efforts, it took approximately four hours to put the fire out.

30.     Unable to open the doors, Mr. Tremblett was trapped in the Tesla vehicle and died from thermal injuries and smoke inhalation before he was able to be rescued.


## COUNT I
## NEGLIGENCE V. TESLA, INC.

31.     The Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 20 inclusive, as though restated herein.

32.     Tesla owed a duty to exercise reasonable care in developing, designing, manufacturing, assembling, testing, inspecting, distributing, selling, advertising, marketing, and providing warnings and instructions for its vehicles, including but not limited to the Subject Vehicle.

33.     Tesla, owed a duty to systematically identify hazards, risks (i.e. probability of an undesired result occurring), and dangers in the design, manufacture, inspection and testing of the vehicles it sold, including the subject vehicle.

34.     Tesla owed a duty to properly design, manufacture, assemble, produce, distribute, and sell the Subject Vehicle such that it was safe, crashworthy and without defect.

35.     Tesla owed a duty to adequately test, inspect, and assure the quality of the Subject Vehicle before placing it into the stream of commerce.

36.     Tesla owed a duty to provide adequate warnings, instructions, and information with the Subject Vehicle before placing it into the stream of commerce.

37.     Tesla breached the above-stated duties.

38.     Tesla's duty as set forth herein extends to people, such as Samuel Tremblett, who would foreseeably drive the vehicles it manufactures, including but not limited to the Subject Vehicle.

39.     The design of the Subject Vehicle had defective conditions (i.e. hazards) unreasonably dangerous to consumers, such as Samuel Tremblett. As set forth above, the Subject Vehicle failed to allow a driver to quickly exit the vehicle when the battery became inoperable and caught fire in a foreseeable crash, causing Samuel Tremblett's avoidable death.

40.     The Defendant, Tesla, breached each of the aforesaid duties by failing to exercise reasonable care in the process of designing, manufacturing, assembling, inspecting, testing,

13

distributing, selling, advertising, marketing, and providing warnings and instructions for the Subject Vehicle and/or its component parts.

41.     Said hazards existed when Tesla placed the subject vehicle into the stream of commerce.

42.     Tesla knew or should have known of the defective and unreasonably dangerous condition of the 2021 Model Y, including the vehicle that was being driven by Samuel Tremblett.

43.     Said hazards were substantial factors in the catastrophic injuries and ultimate death of Samuel Tremblett.

44.     As a direct and proximate result of Tesla's negligence, as described herein, Samuel Tremblett sustained catastrophic thermal injuries and smoke inhalation, which caused his death.

**WHEREFORE**, Plaintiff, Jacquelyn Tremblett as the Personal Representative of the Estate of Samuel Tremblett, demands judgment against Defendant, Tesla, for damages, interest, costs and reasonable attorney's fees and any such other relief as this Court deems necessary and proper.

**COUNT II**
**BREACH OF WARRANTY**

45.     The Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 44 inclusive, as though restated herein.

46.     Tesla, is a merchant of automobiles, as defined in Massachusetts General Laws, Chapter 106, Section 2-104, including but not limited to the Subject Vehicle.

48.     By placing the Subject Vehicle into the stream of commerce, Tesla, expressly and impliedly warranted to Samuel Tremblett, that it and/or its component parts, including but not

14

limited to the electronic door handles, were merchantable and safe for its intended use of driving on the roads of the United States.

48.    Tesla's failure to design, manufacture and market its 2021 Model Y in a condition that would allow an occupant to escape the vehicle when the battery was rendered inoperable rendered the vehicle defective, unreasonably dangerous and not crashworthy.

49.    In designing, manufacturing, advertising, marketing and selling the subject vehicle, the Defendant, Tesla, breached the implied warranty of merchantability within the scope of M. G. L. c. 106, Section 2-314 because the subject vehicle was not merchantable nor fit for its intended and reasonably foreseeable uses.

50.    The subject vehicle was neither merchantable nor fit for use in that the its occupant safety system contained hazardous conditions (i.e. defects), due, in whole or in part, to inadequate structural design, and the operating system which prevented Samuel Tremblett from unlocking and exiting the vehicle to avoid serious injury and death.

51.    As a direct and proximate result of the defective and unreasonably dangerous design of the 2021 Tesla Model Y, Samuel Tremblett became trapped inside the vehicle while it became engulfed in flames, causing him to sustain catastrophic thermal injuries, smoke inhalation injuries and ultimately his death.

**WHEREFORE**, Plaintiff, Jacquelyn Tremblett as the Personal Representative of the Estate of Samuel Tremblett, demands judgment against Defendant, Tesla, for damages, interest, costs and reasonable attorney's fees and any such other relief as this Court deems necessary and proper.

15

## COUNT III
## WRONGFUL DEATH OF SAMUEL TREMBLETT

52.     The Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 51 inclusive, as though restated herein.

53.     Tesla carelessly, negligently, unskillfully, with gross negligence designed, manufactured, and marketed dangerously defective vehicles, including but not limited to the Subject Vehicle, as described herein, so as to cause the death of the decedent, Samuel Tremblett.

54.     Tesla knew or should have known that its conduct created an unreasonable risk of physical harm to the decedent, Samuel Tremblett.

55.     The aforesaid acts of Tesla were negligent, careless, willful, wanton or reckless and in reckless disregard of the safety of consumers including but not limited to the decedent, Samuel Tremblett.

56.     As a direct and proximate result of Tesla's negligence and/or gross negligence, the Plaintiff's decedent, Samuel Tremblett, sustained catastrophic thermal injuries, smoke inhalation injuries, conscious pain and suffering of body and mind and ultimately death.

57.     The next of kin of Plaintiff's decedent, Jacquelyn Tremblett and David Tremblett, are entitled to fair monetary compensation, including, but not limited to, compensations for services, protections, care, assistance society, companionship, comfort, guidance, counsel, and advice of the decedent and to the reasonable funeral and burial expenses of their son, Samuel Tremblett.

58.     As a direct and proximate result of Tesla's negligence, gross negligence as well as its willful and/or reckless conduct causing the death of Samuel Tremblett, the Plaintiff is entitled to, punitive damages in an amount of not less than five thousand dollars ($5,000.00) pursuant to M.G.L.  c. 229 section 2.

16

**WHEREFORE**, Jacquelyn Tremblett, duly appointed administrator of the Estate of Samuel Tremblett, demands judgment against the Defendant, Tesla, and the fair monetary value of the decedent to the Plaintiff and next of kin, including but not limited to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice of the decedent to the Plaintiffs as well as punitive damages in an amount of not less than five thousand dollars pursuant to M.G.L. c. 229 section 2.

<u>COUNT IV</u>
**M.G.L. c.229 s.6. CONSCIOUS PAIN AND SUFFERING OF SAMUEL TREMBLETT**

59.     The Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 58 inclusive, as though restated herein.

60.     As a direct and proximate result of Tesla's negligence, Samuel Tremblett sustained serious conscious pain and suffering prior to his death.

61.     The estate of Plaintiffs' decedent, Samuel Tremblett, is entitled to fair monetary compensation, including, but not limited to, compensation for the decedent's conscious pain and suffering while he was trapped in his Tesla as it was ingulfed in flames, including but not limited to the fear while attempting to escape, the helplessness of being unable to escape, and the fear and knowledge of his imminent death and the physical pain of being burned and suffocating to death.

**WHEREFORE**, Jacquelyn Tremblett, duly appointed Personal Representative of the Estate of Samuel Tremblett, demands judgment and an award of damages against Defendant Tesla, pursuant to M.G.L. c.229 s.6 for the conscious suffering of Samuel Tremblett, said sums so recovered to be held and disposed of by the executors or administrators as assets of the estate of the deceased.

17

## COUNT V
## M.G.L. c.93A §2

62.    The Plaintiff incorporates herein the allegations set forth in paragraphs 1

through 61, inclusive, as though restated herein.

63.    On December 23, 2025, the Plaintiff, by and through her attorney, served a

demand letter as required by M. G.L. c. 93A §9 upon Tesla, via the United States Postal Service.

A copy of that demand letter is attached to this Complaint as Exhibit "A". According to the

Postal Service's tracking documentation, the letter was received at Tesla's principal place of

business in Austin, Texas on December 29, 2025. To date, Tesla has not replied to the demand

letter or made a good faith, reasonable offer of settlement.

64.    In accordance with M. G.L. c. 93A §2(c) the Massachusetts Attorney General has

the authority to promulgate rules and regulations, interpreting and facilitating the enforcement of

§ 2(a).

65.    The regulation promulgated by the Attorney General codified at 940 C.M.R. §

3.08(2), provides that "[i]t shall be an unfair and deceptive act or practice to fail to perform or

fulfill any promises or obligations arising under a warranty."

66.    The regulation promulgated by the Attorney General codified at 940 C.M.R. §

3.01 explicitly defines "warranty" to include the implied warranty of merchantability and the

implied warranty of fitness for a particular purpose.

67.    The regulation promulgated by the Attorney General codified at 940 CMR

3.16 subsections 1-4, provides that it is an unfair and deceptive act or practice if:

(a) It is oppressive or otherwise unconscionable in any respect; or

(b) Any person or other legal entity subject to this act fails to disclose to a

    buyer or prospective buyer any fact, the disclosure of which may have

18

influenced the buyer or prospective buyer not to enter into the

transaction; or

(c) It fails to comply with existing statutes, rules, regulations or laws, meant

for the protection of the public's health, safety or welfare promulgated by

the Commonwealth or any political subdivision thereof intended to

provide the consumers of the Commonwealth protection.

68.     Pursuant to the Chapter 93A and the Attorney General regulations set forth above, Tesla's aforementioned acts, and the following acts of the Tesla constitute unfair and deceptive acts or practices the result of which caused catastrophic injuries to Samuel Tremblett and ultimately his death:

(a) Tesla adopted a design and manufacturing process for the 2021 Model Y,

including the Subject Vehicle, and its component parts that was not common,

usual, customary, prudent or in accordance with established industry safety

standards relating to the design and manufacture of similar vehicles to be driven

on the roads of the United States.

(b) The 2021 Model Y, including the Subject Vehicle was designed and

manufactured without consideration for vehicle occupant protection systems

while being used under intended and/or reasonably foreseeable conditions or in

an intended and/or reasonably foreseeable manner and/or during a motor vehicle

collision or crash.

(c) Tesla failed to perform testing adequate to determine the circumstances under

which the 2021 Model Y, including the Subject Vehicle's occupant protection

systems would become dangerous or hazardous to occupants within the vehicle

19

while being used under intended and/or reasonably foreseeable conditions or in an intended and/or reasonable foreseeable manner and/or during a motor vehicle collision or crash.

(d) Tesla defectively and inadequately designed, developed, tested, manufactured, inspected, marketed, promoted, advertised, and/or sold the 2021 Model Y, including the Subject Vehicle in a condition which was defective, unreasonably dangerous and unfit for its intended or reasonably foreseeable use;

(e). Tesla defectively and inadequately failed to warn of the dangerous properties and design of the 2021 Model Y, including the Subject Vehicle rendering it unfit for its intended or reasonably foreseeable use, to wit - motor vehicle travel; and

(f) The Defendant, Tesla placed the 2021 Model Y, including the Subject Vehicle into the stream of commerce, when it knew or reasonably should have known of its unreasonably dangerous and defective condition.

**WHEREFORE**, Plaintiff, Jacquelyn Tremblett as the Personal Representative of the Estate of Samuel Tremblett, demands judgment against Defendant, Tesla, for damages, interest, costs and reasonable attorney's fees and any such other relief as this Court deems necessary and proper.

## COUNT VI
## WILFUL AND KNOWING VIOLATION OF M.G.L. c. 93A §2

69.    The Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 68, inclusive, as though restated herein.

70.    Tesla's conduct as described herein constitutes a willful or knowing violation of M.G.L. c.93A §2, the result of which caused catastrophic injury and death to Samuel Tremblett.

71.    In accordance with the provisions of M.G.L. c. 93A §9, if the court finds that

the Tesla's conduct was a willful or knowing violation of §2, or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated §2, the plaintiff is entitled to at least two times, but not more than three times the amount of actual damages.

**WHEREFORE**, Plaintiff, Jacquelyn Tremblett as the Personal Representative of the Estate of Samuel Tremblett, demands judgment against Defendant, Tesla, for actual damages, treble damages, interest, costs and reasonable attorney's fees and any such other relief as this Court deems necessary and proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs are entitled to and respectfully request a trial by jury on all claims in this lawsuit.

Respectfully submitted
The Plaintiff,
By her attorneys,


/s/ Andrew D. Nebenzahl
Andrew D. Nebenzahl, BBO# 368065
anebenzahl@neblawgroup.com
Daniel J. Smith
BBO# 717826
The Nebenzahl Law Group, P.C.
One Post Office Square
Sharon, MA 02067
(781) 784-2000

Dated: February 4, 2026

# EXHIBIT "A"



THE
NEBENZAHL
LAW GROUP, P.C.

December 23, 2025

**By: Overnight Mail**
Brandon Ehrhart, Esq.
General Counsel
Tesla Inc.
1 Tesla Road
Austin, TX 78725

Re:    **Jacqueline Tremblett, mother and Personal Representative of
Samuel Tremblett v. Tesla, Inc.**

Dear Attorney Ehrhart:

This firm represents Ms. Jacqueline Tremblett, mother and Personal Representative of
Samuel Tremblett with respect to the wrongful death of her son. This letter is to advise you that
the conduct of Tesla, Inc. ('Tesla") in this matter constitutes unfair and deceptive practices
prohibited by the Massachusetts Consumer Protection Act, General Laws c. 93A. As such, this is
a demand for relief as required by the statute.

## FACTS

In 2014, Tesla began equipping vehicles with technology and hardware that was intended
to allow the vehicles to automate some steering, braking, and acceleration functions, although the
software to control those functions was not yet available. At all relevant times, Tesla advertised
and marketed its vehicles in a manner that has caused consumers, including the decedent Samuel
Tremblett, to believe that the Tesla is crashworthy, particularly in frontal impact crashes.
Moreover, Tesla officials made numerous statements over the subsequent years, representing the
company's emphasis on safety in order to induce a sceptical public that its vehicles were safe and
reliable. These statements included the following:

In its earnings call for the third quarter of FY 2018, CEO Elan Musk stated the following:

*[W]e're really going to try to go the extra mile with vehicle safety, not just like
there's a series of government mandated tests, but what some companies do is
they game the system. So they know where the cycle impact is going to be, they
strengthen it right in that position. At Tesla, we're like, okay, what is the*

Brandon Ehrhart, Esq.
General Counsel
Tesla Inc.
December 23, 2025
**2** | P a g e

*weakest point in the car? Let us test it at that position. So the actual safety is not fully captured in the tests because we anti-game the system.*

Following Mr. Musk's statement, a lead safety engineer stated:

*And also important is our principal mission statement on safety, because what we want to do is safety has been probably the important factor for our vehicle. It's not just for electric vehicle, any vehicle period.*

Mr. Musk later stated:

*That's what I mean by like anti game the system, like what is the worst way that the car could be hit, not just sort of strengthen where we know the test will happen and that kind of thing. So, obviously, we're all in these cars. Our friends are in these cars, families in the cars, so we care a great deal about safety. A lot of people think safety is boring, but not Tesla. … Yeah, I mean, really, honestly, the top reason to refer a friend to buying Tesla is it's going to keep your friend safe.*

At the earnings call for the third quarter of FY2021, Mr. Musk represented:

*Safety is extremely important for Tesla. It's the right thing to do. And if you look at various independent testing and regulatory testing of our products, you can see the work of the Testing of our products, you can see the work of incredibly talented engineers and the results of those tests. And our goal in developing safety-oriented software around the car Is to continue to go beyond what the hardware is able to provide. … We're excited about the ability for folks to become safer and as a result save money. And it feeds into our priority of a company of building the safest products in the world.*

Finally, during the earnings call for the first quarter of 2025, Mr. Musk reiterated:

*[W]e here at Tesla, we're absolutely hardcore about safety. You know, we go to great lengths to make the safest car in the world and have the lowest accidents per mile*

Notwithstanding Tesla's representations of its commitment to passenger safety, it manufactured, marketed and sold to the general public the 2021 Model Y which was defective and unreasonably dangerous. Despite repeated concerns from Tesla engineers, Mr. Musk insisted

Brandon Ehrhart, Esq.
General Counsel
Tesla Inc.
December 23, 2025
**3** | P a g e

that the vehicles have only sleek door handles which could only be operated electronically. The flaw in this design is that an electrical failure prevented the doors from operating. Since the vehicle was introduced into the United States market, Tesla received numerous reports of adults and children trapped in vehicles when the battery system suddenly failed. Despite the advice of Tesla's engineers that this design was a serious safety hazard, Mr. Musk refused to approve a safe, alternative design.

## THE CRASH

On October 29, 2025, at approximately 1:00 am, Samuel Tremblett was driving alone in the Northbound lane of Turnpike Street, (Route 138) in Easton, Massachusetts. Shortly after Mr. Tremblett entered the town of Easton from Raynham, the 2021 Tesla Model Y he was driving was caused to leave its lane of travel, cross the southbound lane, leave the roadway and collide with a tree. The collision between the vehicle and the tree caused the vehicle to explode in flames. As a result of the door-lock system designed and distributed by Tesla, Samuel Tremblett was unable to exit the vehicle.

Following the crash, Mr. Tremblett became in contact with an emergency dispatcher through the 911 system. During the conversation with the dispatcher, he explained that his vehicle was on fire and he was trapped inside. Although officers from the Easton Police Department arrived at the scene quickly, they were unable to suppress the fire or retrieve Mr. Tremblett from the vehicle due to the severity of the fire. Shortly thereafter, officials of the Easton Fire Department arrived on the scene of the fire and worked to extinguish the flames. Unfortunately, despite diligent efforts, it took approximately four hours to put the fire out, during which Mr. Tremblett died from thermal injuries and smoke inhalation. A copy of the Police Report from the Easton Police Department is attached hereto.

## LIABILITY

Massachusetts' product liability law is based on breach of the implied warranty of merchantability.  The warranty requires every product to be safe for the ordinary purpose for which the product is sold, including all uses that are reasonably foreseeable.[1]  This warranty cannot be excluded, limited, or modified with respect to injury to the person.[2]  A breach of the warranty of merchantability constitutes an unfair and deceptive act or practice in violation of Massachusetts General Laws c. 93A, §§ 2 and 9.

---

[1] M.G.L. c. 106, § 2-314
[2] M.G.L. c. 106, § 2-316A

Brandon Ehrhart, Esq.
General Counsel
Tesla Inc.
December 23, 2025
**4** | P a g e

Chapter 93A was " designed to encourage more equitable behavior in the marketplace and impose liability on persons seeking to profit from unfair practices.'" *Arthur D. Little, Inc. v. Dooyang Corp.* , 147 F.3d 47, (1st Cir. 1998) (quoting *Linkage Corp. v.* Trustees. *of Boston University*, 425 Mass.1, (1997)). Section 2(c) of Chapter 93A authorizes the attorney general to promulgate rules and regulations interpreting and facilitating the enforcement of Section 2(a). Pursuant to this authority, the attorney general has promulgated regulations interpreting Chapter 93A, including  940 C.M.R. § 3.08(2), which provides that "[i]t shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty." The regulations explicitly define "warranty" to include the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. See:  940 C.M.R. § 3.01. In the consumer context, "a breach of warranty constitutes a violation of G.L. c. 93A, § 2." *Maillet v. ATF-Davidson Co.* , 407 Mass. 185, 193 (1990)

The statute subjects a defendant at a minimum to compensatory damages and attorney's fees and costs.  In addition, the statute allows for double or treble damages when the defendant's conduct is determined to be a ***willful or knowing*** violation of the statute. Additionally, the statute requires a defendant such as Tesla to respond to this notice with a reasonable offer of settlement within thirty days of your receipt. If you fail to respond within thirty days with such a reasonable offer of settlement, Tesla is subject to being assessed multiple damages and attorney's fees by the Court.

Here, given that the original violation of the statute and breach of the warranty of merchantability is clear Mrs. Tremblett's demand at this time for the wrongful death of her son is in the amount of Twenty-five Million Dollars ($25,000,000.00) for her compensatory damages. This demand is exclusive of any punitive damages or multiple damages which Mrs. Tremblett may seek in the event it is necessary to file suit. Please be assured that if I do not receive a response to this letter within thirty days of your receipt, I will file suit immediately on Mrs. Tremblett's behalf.

Thank you for your attention to this matter.

Very truly yours,

Andrew D. Nebenzahl

ADN/ms
Enclosures

# Incident Report

11/05/2025

**Incident #: 25EAO-1390-OF**
**Call #: 25-69708**



```
Date/Time Reported: 10/29/2025 0101
Report Date/Time: 10/29/2025 0606
           Status: No Crime Involved

Reporting Officer: Sergeant Christopher LaCount
Approving Officer: Detective Sgt Daniel Perry

     Signature: _____

     Signature: _____
```

| # | EVENTS(S) |
|---|-----------|

```
LOCATION TYPE: Highway/Road/Alley/Street       Zone: EAS SOUTH SECTOR
765 TURNPIKE ST
EASTON MA 02356
```

**1    FATAL ACCIDENT**

| # | VICTIM(S) | | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|---|-----|------|-----|-----|-------|
| 1 | **TREMBLETT, SAMUEL D** | | M | W | 20 | | |

```
41 PINE ST
EASTON MA 02356

DOB:
ETHNICITY: Not of Hispanic Origin
RESIDENT STATUS: Resident
VICTIM CONNECTED TO OFFENSE NUMBER(S): 1
CONTACT INFORMATION:
CallBack Number     (Primary)     508-386-7766
```

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|-----------|-------------|-----|------|-----|-----|-------|



NARRATIVE FOR SERGEANT CHRISTOPHER LACOUNT
Ref: 25EAO-1390-OF

On Wednesday, October 29, 2025, I, Sergeant Christopher LaCount was working the 0000-0800 shift assigned to subdued cruiser #32. At approximately 0100 hours, Officers Josh Briggs and Joe Cowing were dispatched to the area of 765 Turnpike Street for a report of a crash notification. Dispatch then informed responding officers they were able to speak with the operator who was reporting he was trapped inside of the vehicle after a crash and the vehicle was now on fire. At this time I informed dispatch I was en route to the accident.

Upon my arrival, I observed a vehicle down an embankment of the south bound travel lane with the front end resting against a tree fully engulfed in flames. I informed dispatch there was a vehicle that was currently on fire and that I could not see anyone inside of the vehicle. Due to the size of the fire and the vehicle currently exploding multiple times I was unable to try and put the fire out until the Easton Fire Department arrived on scene. At this time I was unable to get a registration or make out the make and model of the vehicle. Sergeant Tim Webster, Officer Josh Briggs and Jow Cowing arrived on scene shortly after with the Easton Fire Department. The Easton Fire Department worked the fire and attempted to put the fire out but had to constantly apply water to it as the fire reignited numerous times. After the fire had calmed down and the smoke started to clear, Sergeant Webster and I observed ▮▮▮▮▮▮▮▮ located in the back seat of the vehicle. I was able to identify the vehicle at this time as a Tesla Suv.

SEMRECC informed me the phone number ▮▮▮▮▮▮▮▮ associated with the crash notification came back to a Samuel Tremblett out of 41 Pine Street, Easton, Massachusetts. SEMRECC also informed me there was a white Tesla Model Y bearing MA REG (5MTN45) registered to Samuel. Sergeant Webster notified Detective Sergeant Dan Perry of the fatal accident and he informed me, Detectives Sean Lynch and Brian Rooney would be responding to the scene. While en route Detective Rooney notified the Massachusetts State Police CPAC unit of the fatal accident. Sergeant Webster and I notified Deputy Chief Phil Adams and Chief Keith Boone of the motor vehicle accident. Chief Boone later responded to the scene.

At approximately 0155 hours, Detectives Lynch and Rooney arrived on scene. At approximately 0220 hours Massachusetts State Troopers, Jeremy Dellacese (CPAC), Carol Leurini (CARS), and Ryan Parker (Crime scene) arrived on scene. I then spoke with intake specialist Justin Kuhnle from the Massachusetts Medical Examiners Office who informed me they accepted jurisdiction and the case number was 2025-15591 at 0245 hours. The Medical Examiners Office arrived on scene at approximately 0410 hours and removed the deceased from the scene shortly after.

Sergeant Tim Webster, Detective Brian Rooney, and Massachusetts State Trooper Jeremy Dellacese went to 41 Pine Street and informed Jacqueline Tremblett her son Samuel was involved in a fatal accident. Jacqueline confirmed with officers that the vehicle involved was the same as her son's vehicle and that he was home earlier in the evening after returning home from college in New York. Jacqueline stated she last saw him before she fell asleep around 2200 hours. Big Wheels towing arrived on scene at approximately 0645 hours and removed the vehicle from the scene at 0730 hours. Big Wheels towing was bringing the vehicle to their tow yard in Freetown, Massachusetts.

SUPPLEMENTAL NARRATIVE FOR DETECTIVE BRIAN ROONEY
Ref: 25EAO-1390-OF

1. On October 29, 2025 at approximately 1:09 AM, I, Detective Brian Rooney was notified by my supervisor, Detective Sergeant Dan Perry, Easton Patrol Officer's were on the scene of a fatal single-motor vehicle accident in the vicinity of 700 Turnpike Street (Route 138) in Easton. It was reported the vehicle left the roadway and crashed into a tree. It was also reported at least one occupant of the vehicle was trapped inside and the vehicle was fully engulfed in flames when Sergeant Chris LaCount arrived on scene.

2. I arrived at the Easton Police Department at approximately 1:30 AM and contacted Trooper Jeremy Dellacese, the on-call Massachusetts State Police Detective assigned to the Bristol County CPAC Unit and requested he respond to the scene. I also spoke with Massachusetts State Police Trooper Carol Leurini of the Collision Analysis & Reconstruction Section (CARS), who also informed me she would be responding. Trooper Ryan Parker of Crime Scene Services would also respond to photograph the scene. The Office of the Chief Medical Examiner was contacted and later responded to the scene.

3. At approximately 1:46 AM, I arrived on scene and observed what appeared to be a white Tesla sedan approximately twenty feet off the roadway with significant front end damage. A small fire was still actively burning at the front and rear of the vehicle with heavy smoke coming from it. The vehicle was west of the southbound lane, facing north. I also observed ████████████ in the backseat of the vehicle. Present on scene were members of the Easton Fire Department who were actively attempting to extinguish the fire. In addition, Easton Police Sergeant Tim Webster, Sergeant Chris LaCount, Officer Josh Briggs and Officer Joe Cowing were on scene and Easton Police Detective Sean Lynch also responded. While canvassing the area around the crash, I located two Tesla headlights, along with other vehicle parts approximately twenty feet north of where the vehicle came to rest, suggesting it was traveling north prior to striking the tree.

4. It was determined the registered owner of the vehicle (Massachusetts Registration #5MTN45) was SAMUEL TREMBLETT, age 20, of 41 Pine Street in Easton. It was also determined the phone number which alerted the crash notification was ████████████ and belongs to SAMUEL. After gathering this information, Trooper Dellacese, Detective Lynch, Sergeant Webster and I went to 41 Pine Street in an attempt to make contact with SAMUEL's family.



5.

SUPPLEMENTAL NARRATIVE FOR DETECTIVE BRIAN ROONEY
Ref: 25EAO-1390-OF

6. Trooper Dellecese, Detective Lynch, Sergeant Webster and I, remained at the home with JACQUELYN until her ex-husband and SAMUEL's father, DAVID TREMBLETT arrived.

7. The 911 call made from SAMUEL's phone was obtained and I was able to listen to it. At approximately 1:01 AM, an automated crash notification was received and dispatchers from the Southeastern Massachusetts Regional 911 District were able to connect with a male inside the vehicle. ███████████████████████████████████████████████████████████████████████████ ██████████████████████████████ The 911 call is attached to this report.

8. At approximately 4:30 AM, I responded back to the crash scene and the Tesla was fully extinguished and minimally smoking. I took photographs of the vehicle prior to the ME's Office removing SAMUEL's remains and after. At approximately 6:45 AM, Big Wheels Towing & Recovery arrived on scene to remove the Tesla. Investigators cleared at approximately 7:31 AM.

9. Positive identification of the human remains found inside the Tesla is still pending from the Office of the Chief Medical Examiner's Office. Although, it is believed SAMUEL was the operator of the vehicle, a supplemental narrative will be completed once confirmation is made.

Detective Brian Rooney
Easton Police Department